[Cite as *Huff v. Black Hawk Dynasty*, 2012-Ohio-1170.]

STATE OF OHIO          )                  IN THE COURT OF APPEALS

                          )ss:            NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT     )

KRISTALYN J. HUFF, et al.             C.A. No.      26000

     Appellees

     v.                        APPEAL FROM JUDGMENT
ENTERED IN THE

BLACK HAWK DYNASTY, et al.       COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO

     Appellants              CASE No.     CV 2010-05-3686

DECISION AND JOURNAL ENTRY

Dated: March 21, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Judy Bartow, doing business as Black Hawk Dynasty, signed a commercial lease and personal guaranty for the purpose of opening a bingo parlor in Akron. When she lost her license to offer bingo, she notified the lessors, Kristalyn Huff and William D. Huff III, that Black Hawk Dynasty had no way to make any money to pay its bills. The Huffs sued Ms. Bartow and Black Hawk Dynasty to recover over $50,000 in past due rent, utilities, and other obligations allegedly due under the lease. The trial court rendered summary judgment in favor of the Huffs, and Ms. Bartow and Black Hawk Dynasty appealed. We affirm in part because there is no genuine issue of material fact remaining for trial on the issue of liability. We reverse in part because there is a genuine issue of material fact remaining for trial regarding the calculation of damages.

BACKGROUND

{¶2}    In July 2003, Ms. Bartow, doing business as Black Hawk Dynasty, signed a commercial lease for a storeroom on East Market Street in Akron.  The lessors were Ms. Huff and Mr. Huff.  The lease ran for five years beginning August 1, 2003.  Ms. Bartow signed a separate document in her personal capacity "unconditionally guarantee[ing] . . . the full and prompt payment of all rent required to be paid under [the] Lease . . . and  . . . the full and timely performance and observance of all the terms [and] covenants . . . therein provided to be performed[.]"  Both the lease and the guaranty included an exception in the event that Ohio law changed during the period of the lease.  The lease indicated that, "[s]hould Ohio law be changed in such a way that bingo is not able to continue then, with 90 days notice to Lessor, this lease becomes null and void and the obligation to pay rent ends for Black Hawk Dynasty."  The guaranty provided that "Guarantor would not be held responsible if Ohio law is changed in such a way that bingo is not able to continue at this location.  In that event, with 90 days notice to Lessor, this lease Guaranty becomes null and void and the obligation to pay rent ends for Black Hawk Dynasty."

{¶3}    Trouble began in January 2008 when Black Hawk stopped paying rent.  In 2010, the Huffs sued Black Hawk and Ms. Bartow for over $50,000 in rent, property taxes, utilities, and other costs allegedly due under the lease.  The Huffs attached to their complaint "Exhibit C," a seven-page document detailing the unpaid items from each year of the lease.  Despite twice moving for leave to plead, the defendants failed to answer the complaint.  Several months later, the Huffs moved for summary judgment.  The defendants promptly filed an answer, but did not respond to the summary judgment motion.  After the trial court granted summary judgment to the Huffs, the defendants moved for relief from judgment and leave to respond to the summary

judgment motion. The trial court vacated the summary judgment order and permitted the defendants to respond to the Huffs' motion.

{¶4} In opposition to summary judgment, Ms. Bartow and Black Hawk argued that Ohio gaming laws had changed, causing Black Hawk to be unable to continue bingo at the leased premises. They argued that, under the terms of the lease, the change in law terminated the lease and voided the separate guaranty as the obligation to pay rent under the lease ended with the change in law. They also argued that the Huffs "are attempting to charge Black Hawk for more in total rent than is specifically allowed under the contract." Thus, they argued that there remained genuine issues of material fact regarding "whether there is any amount due and owing . . . and, if so, what that amount actually is[.]" They supported their brief in opposition to summary judgment with Ms. Bartow's affidavit, indicating that the "lease was terminated" "[w]hen Black Hawk Dynasty could not obtain a bingo license[.]" In her affidavit, Ms. Bartow wrote that the Huffs prepared the lease, modification, and guaranty documents and that she and Black Hawk Dynasty do not owe any money under the lease.

{¶5} The trial court later ordered the defendants to supplement their response to summary judgment with an explanation of how Ohio law had changed resulting in bingo not being able to be played at the leased premises. Black Hawk responded by reprinting the licensure requirements of "Section 109:1-3-02 et seq." of the Ohio Administrative Code, which it alleged were amended in July 2005. Black Hawk did not point to any changes from the prior version of the law, but merely stated in its brief that "said section enhanced the record keeping and record retention requirements of all bingo operators" and that "[Ms.] Bartow was unable to meet the licensing requirements . . . and thus was unable to obtain a bingo license." In response to the supplement, the Huffs argued that there was no change in the licensure requirements

before Black Hawk lost its license at the beginning of 2008. In support, the Huffs filed the deposition of Judy Bartow. The trial court granted summary judgment in favor of the Huffs and against Black Hawk Dynasty and Ms. Bartow in the amount of $51,860.21, plus post-judgment interest. Black Hawk and Ms. Bartow have appealed.

## SUMMARY JUDGMENT

**{¶6}** Black Hawk and Ms. Bartow's assignment of error is that the trial court incorrectly granted summary judgment to the Huffs. They have argued that there remain genuine issues of material fact regarding whether the Huffs properly notified them in writing of default as required under the lease, whether changes in Ohio's gaming laws would have prevented Black Hawk from being able to conduct bingo at the leased premises, and whether the Huffs' accounting of amounts due under the lease is accurate.

**{¶7}** Black Hawk and Ms. Bartow have argued that a genuine issue of material fact exists regarding whether they owe any money under the lease because the Huffs failed to notify them of default as required by the terms of the contract. The Huffs have argued that this argument was not preserved for appeal and, even if it had been preserved, there was no need for the lessors to notify Ms. Bartow of default after she notified them of her intention to abandon the property. The Huffs have correctly pointed out that Ms. Bartow and Black Hawk failed to preserve this argument for appeal. By failing to raise this issue before the trial court, Ms. Bartow and Black Hawk have forfeited their right to raise it on appeal. *Rude v. NUCO Educ. Corp.*, 9th Dist. No. 25549, 2011-Ohio-6789, at ¶ 29.

**{¶8}** Ms. Bartow and Black Hawk have also argued that a genuine issue of material fact remains regarding whether they owe any money to the Huffs due to a change in Ohio law that terminated the lease. In response to the summary judgment motion, Black Hawk and Ms.

Bartow did not present any evidence or otherwise support their statement that Ohio gaming laws had changed since they executed the lease agreement in 2003. The trial court correctly determined that Black Hawk "failed to show how the[ ] [licensure] requirements were in any way different [from] the requirements in place prior to the signing of the lease." Further, Ms. Bartow testified at deposition that there was no change in Ohio law that prevented her from operating a bingo parlor at that location. Ms. Bartow testified that Black Hawk lost its license to conduct bingo because "[t]he girl that was supposed to fill . . . out [the license renewal application] didn't fill it out in time." Therefore, Ms. Bartow had written a note to the Huffs, explaining that, because Black Hawk did not have a license to conduct bingo, it had no way to generate money to pay further bills including rent. The trial court correctly determined that there was no genuine issue of material fact regarding whether the lease was terminated by a change in Ohio gaming laws.

{¶9} Ms. Bartow and Black Hawk's final argument is that there remains a genuine issue of material fact regarding the amount of money that they allegedly owe under the lease. Ms. Bartow and Black Hawk have contested the accuracy of the Huffs' evidence regarding the amounts due. They have argued that Exhibit C to Ms. Huff's affidavit was not properly incorporated by reference in the affidavit and that Ms. Huff failed to establish who prepared the summary of charges or how the information was gathered.

{¶10} Under Rule 56(E) of the Ohio Rules of Civil Procedure, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated[.]" The Ohio Supreme Court has held that a specific allegation in the affidavit that it was made based on personal knowledge is sufficient to meet the requirements of the rule and,

"if the adverse party contends otherwise, an opposing affidavit setting forth the appropriate facts must be submitted." *State ex rel. Corrigan v. Seminatore*, 66 Ohio St. 2d 459, 467 (1981). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E). Under Rule 56(C), the court must consider only evidence that is properly submitted, including "pleadings, depositions, . . . [and] affidavits, . . . timely filed in the action[.]" The court must construe all of the evidence "most strongly" in favor of the party against whom the motion for summary judgment is made. Civ. R. 56(C). "Summary judgment shall be rendered forthwith" if the properly submitted evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* "A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made[.]" *Id.*

{¶11} In her affidavit, Ms. Huff alleged that she was the owner of the property at issue and that she "ha[s] first-hand knowledge of the matters contained in this Affidavit[.]" She testified via affidavit that exhibit C, which she attached to her complaint and her affidavit, is "a true and accurate copy of the accounting which details the balance due and owing from Defendants including unpaid rents, property taxes, insurance utilities and maintenance from August 2003, through the present, plus interest at the rate of 10 percent (10%) on all items unpaid in excess of thirty days (30) from the date due and owing." Exhibit C includes an itemized statement for each year of the leasehold plus a "[m]aster [s]tatement" that combines the

information from each year into one accounting of monies allegedly owed for categories such as "[l]ighting," "[s]prinkler system," and "[g]eneral [u]pkeep."

{¶12} Ms. Bartow has essentially argued on appeal that Ms. Huff does not have personal knowledge of the information described in the accounting. Although Ms. Bartow disputed the amount owed, when she testified by affidavit in response to the summary judgment motion, she did not include any facts tending to show that Ms. Huff did not have personal knowledge of the amounts due under the lease. *See State ex rel. Corrigan v. Seminatore*, 66 Ohio St. 2d 459, 467 (1981). In her brief in opposition to summary judgment, Ms. Bartow argued that the Huffs "are attempting to charge Black Hawk for more in total rent than is specifically allowed under the contract." In her affidavit, Ms. Bartow alleged that "[a]ll of the amounts alleged by [the Huffs] as due and owing are disputed." At deposition, Ms. Bartow admitted that Black Hawk stopped paying rent in January 2008. She also testified that, at that time, Black Hawk owed "some" "arrearages in terms of rent," but, when asked about the accounting, Ms. Bartow contested some of the numbers. For instance, she testified that the parties had agreed that "paving was not [Black Hawk's] responsibility" and that the parking lot would be "fixed before [Black Hawk] moved there[.]" Thus, she offered evidence, of a type approved by Civil Rule 56, tending to show that Ms. Huff's accounting was not accurate. Construing the evidence most strongly in favor of Ms. Bartow and Black Hawk, we hold that the Huffs were not entitled to summary judgment as a matter of law on the question of damages because a genuine issue of material fact exists about the accuracy of the accounting. Therefore, the judgment must be reversed for a trial on the issue of damages only. Ms. Bartow and Black Hawk's assignment of error is sustained to the extent it addressed the issue of damages.

CONCLUSION

**{¶13}** Ms. Bartow and Black Hawk's assignment of error is overruled regarding liability, but sustained in regard to damages. There is no genuine issue of material fact regarding whether there was a change in Ohio law that terminated Black Hawk's obligations under the lease and Ms. Bartow's obligations under the guaranty. There is, however, a genuine issue of material fact regarding whether they owe all of the charges listed in Ms. Huff's accounting of amounts due. The judgment of the Summit County Common Pleas Court is reversed in regard to damages, and the cause is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____

CLAIR E. DICKINSON
FOR THE COURT

CARR, J.
WHITMORE, P.J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

MICHAEL T. CALLAHAN, Attorney at Law, for Appellants.

LAWRENCE R. BACH, Attorney at Law, for Appellees.